IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **COOPER CLINIC, P.A.,**<br><br>  Plaintiff,<br><br>  v.<br><br>**PULSE SYSTEMS, INC.,**<br><br>  Defendant.<br><br>**PULSE SYSTEMS, INC.,**<br><br>  Counterclaimant,<br><br>  v.<br><br>**COOPER CLINIC, P.A.,**<br><br>  Counterclaim Defendant. | Case No. 14-1305-JAR-GLR |

## MEMORANDUM AND ORDER

Plaintiff Cooper Clinic, P.A. brings this action against Defendant Pulse Systems, Inc., for declaratory relief and damages, based upon alleged deficiencies in software and services Defendant sold to Plaintiff pursuant to a contract between the parties. Defendant has filed a counterclaim for Plaintiff's alleged breach of the contract. The matter comes before the Court on Plaintiff's Motion to Compel Discovery (Doc. 56). Plaintiff certifies, pursuant to Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2, that it has made good faith efforts to confer with Defendant regarding this discovery dispute. The motion is fully briefed, and the Court is prepared to rule. For the reasons stated in detail below, the Court grants in part and denies in part the motion to compel.

1

## I. Factual Background

### A. Claims and Counterclaim

Plaintiff is a multi-specialty medical clinic, serving the Fort Smith, Arkansas, region. Defendant is a business that provides software to healthcare providers. This action arises out of an Information System Agreement ("Agreement") and Addendum, entered into by the parties in June 2013. Defendant allegedly agreed to install, implement and service practice management system ("PMS") software and electronic health record ("EHR") software. The parties agreed that the software would meet certain minimum requirements and would perform as Defendant demonstrated. Plaintiff alleges that during Defendant's demonstrations, which were not in a live environment, the PMS software exhibited the same or increased functionality as compared to the software Plaintiff was using at the time. Leading up to the software "going live," Defendant allegedly told Plaintiff that claims submitted through the PMS software would have a 93 percent to 96 percent payor acceptance rate. The Agreement provided for a "Production Date" and "Conversion Date" for the software, but final implementation was delayed until November 11, 2013.

Plaintiff alleges that it encountered multiple problems with the software from the start. For example, beginning on November 11, 2013, Plaintiff was unable to view the status of pending medical claims submitted through the PMS software, and Medicare and other payors were rejecting claims submitted through the software. Plaintiff claims that Defendant, although aware the PMS software was submitting claims improperly, did not notify Plaintiff of this fact. Plaintiff further alleges that Defendant was resubmitting claims multiple times to Medicare and other payors, and that Defendant lost Plaintiff's charges in its system, resulting in no Medicare or other payor payments. As a result, Plaintiff allegedly experienced an approximately $1.3 million

shortfall in Medicare and other payments, and was forced to borrow $1.5 million to avoid bankruptcy.  Plaintiff attaches several "open issue lists" to its Complaint, which purportedly reflect some of the deficiencies it encountered.  The PMS software allegedly cannot properly format some claims sent to payors, thereby reducing the acceptance rate for Plaintiff's claims and reducing its cash flow and delaying reimbursement for medical services.

Plaintiff also alleges that it experienced "a number of [s]oftware deficiencies" with the EHR.[1]  For example, the EHR cannot produce the required advanced beneficiary notice ("ABN") to Medicare patients or send appropriate billing modifiers to the PMS software system. This requires Plaintiff to complete the ABN by hand and develop a manual process to notify its business office that an ABN has been signed, so that Plaintiff can submit the claim to Medicare. Plaintiff estimates that using this manual process has caused it to lose one hour (presumably per day) for each of the three employees interacting with the ABNs.[2]

Plaintiff further alleges that it notified Defendant of these deficiencies, associated with both the PMS software and the EHR software, but Defendant did nothing to resolve the issues and eventually ceased communicating with Plaintiff.  Plaintiff claims these problems constitute "Showstoppers," as that term is defined in the Addendum, and thus rise to the level of material breaches of the Agreement.  As a result of these problems, Plaintiff entered into an agreement with another software provider on September 12, 2014, and began submitting all claims through this new provider.

Plaintiff seeks declaratory relief to terminate the Agreement and to require Defendant to submit thereunder to its "orderly transition" obligations.  Plaintiff also asserts claims for breach

---

[1] Doc. 1 at 5.
[2] *Id.* at 5–6.

of contract, breach of warranty, and fraud. Defendant asserts a counterclaim, alleging that Plaintiff breached the Agreement by failing to make required payments.

### B. Discovery Dispute

Plaintiff served Defendant with Requests for Production. They include the following Requests, Numbers 21 through 28:

> **REQUEST NO. 21:** Produce all documents and e-mails reflecting problems, issues or deficiencies with performance of the PMS licensed to providers other than Cooper.
>
> **REQUEST NO. 22:** Produce all documents and e-mails reflecting problems, issues or deficiencies with performance of the EHR licensed to providers other than Cooper.
>
> **REQUEST NO. 23:** Produce all documents and e-mails relating to claims for providers other than Cooper, which Pulse was unable to submit through the PMS.
>
> **REQUEST NO. 24:** Produce all documents and e-mails relating to claims for providers other than Cooper, which were submitted through the PMS and rejected by Medicare or other payors.
>
> **REQUEST NO. 25:** Produce all documents and e-mails reflecting claims for providers other than Cooper, which Pulse submitted two or more times to Medicare or other payors.
>
> **REQUEST NO. 26:** Produce all documents and e-mails reflecting formatting errors or issues with claims for providers other than Cooper, which were submitted through the PMS.
>
> **REQUEST NO. 27:** Produce all complaints, criticisms and concerns regarding the PMS received from providers other than Cooper.
>
> **REQUEST NO. 28:** Produce all complaints, criticisms and concerns regarding the EHR received from providers other than Cooper.
>
> **REQUEST NO. 29:** Produce all answers and responses to Interrogatories, Requests for Production, and Requests for Admissions which Pulse has served in any lawsuit or arbitration concerning the PMS and/or EHR.

Defendant objected to Requests 21 through 28 as overbroad and unduly burdensome. It objected to Request 29 as overbroad as to time and subject matter. In response, Plaintiff proposed limiting Requests 21 through 26 to complaints, documents and e-mails concerning issues "similar to the case at hand," and proposed limiting Requests 27 and 28 to "customer complaints which are similar to Cooper's complaints."[3] Plaintiff also proposed limiting the timeframes for documents in Requests 21 through 28 to June 4, 2010, through September 15, 2014, and in Request 29 to June 4, 2010 through the present.[4] Counsel for the parties engaged in several rounds of communication, in which Defendant further explained its objections. Plaintiff further refined its Requests and argued their relevancy and its need for them. The parties could not resolve the dispute,[5] and Plaintiff filed the instant motion.

## II.     Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides, in relevant part, that

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[6]

When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the

---

[3] Doc. 56-2.

[4] *Id.*

[5] Defendant states in its Response that it believed all issues between the parties regarding discovery disputes were resolved. Doc. 57 at 1.

[6] Fed. R. Civ. P. 26(b)(1).

5

ordinary presumption in favor of broad disclosure.[7]  Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request.[8]

This Court "looks with disfavor on conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad."[9]  The party filing a motion to compel has the initial burden of addressing each boilerplate objection in its motion, and by doing so, that party brings the objection "into play" and places the burden on the objecting party to support its objections.[10]  "[T]he objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable."[11]

## III.   Discussion

As a threshold matter, Defendant argues that Plaintiff has failed to meet its burden of addressing each of Defendant's objections to the Requests in its motion to compel, and thus the motion is not ripe for consideration.  A cursory review of the motion, however, demonstrates that Plaintiff adequately addressed the objections.[12]  While it might have addressed the objections more specifically or directly, it nonetheless brought them "into play" and analyzed them in its reply.  The Court, therefore, finds that the motion is ripe for consideration.  Having resolved this initial matter, the Court addresses the objections.

---

[7]*Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004) (citation omitted).

[8]*Id.* (citation omitted).

[9]*Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004) (quoting *Miner v. Kendall*, No. 96-1126-MLB, 1997 WL 695587, at *1 (D. Kan. Sept. 17, 1997)).

[10]*Id.* at 671 n.37.

[11]*Id.* at 670–71.

[12]*See* Doc. 56.

Defendant argues that each of Plaintiff's Requests is overly broad and unduly burdensome. "As this Court has previously noted, a request may be overly broad or unduly burdensome on its face 'if it is couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within its scope.'"[13] The use of omnibus terms—such as "relating to," "pertaining to," or "concerning"—may signal an overly broad request when the term modifies a general category or broad range of documents.[14] Such a request for a broad range of documents "requires the respondent either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail either obvious or hidden, within the scope of the request."[15] "When, however, the omnibus phrase modifies a sufficiently specific type of information, document, or event, rather than large or general categories of information or documents, the request will not be deemed objectionable on its face."[16]

### A.    Requests 21 and 22

Requests 21 and 22 seek "all documents and e-mails reflecting problems, issues or deficiencies with performance" of the PMS software (Request 21) and EHR software (Request 22) programs licensed to providers other than Plaintiff. Defendant argues that these requests are overbroad because the omnibus term "reflecting" modifies a general category or broad range of documents, i.e., "problems, issues or deficiencies with performance" of the software. Defendant also asserts that these Requests "remain unlimited in time."

---

[13]*Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005) (quoting *Audiotext Commc'ns Network, Inc. v. U.S. Telecom., Inc.*, No. 94-2395-GTV, 1995 WL 18759 (D. Kan. Jan. 17, 1995)).

[14]*Id.* at 381–82.

[15]*Id.* (quoting *Audiotext Commc'ns.*, 1995 WL 18759, at *1).

[16]*Id.* at 382 (quoting *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661 (D. Kan. 2004)).

In *Cardenas v. Dorel Juvenile Group, Inc.*, Magistrate Judge David Waxse held that a request for production of all documents "pertaining to the design of the Maxi-Cosi 'Side Protection System' for [child restraint devices in cars]" was not overbroad.[17]  Judge Waxse explained that the omnibus term "pertaining to" did not modify a general category of documents, but instead modified "a particular Side Protection System and the side impact testing of a certain group of child restraint devices."[18]  Here, Requests 21 and 22 seek documents related to specific software programs.  Further, the omnibus term "reflecting" modifies "problems, issues or deficiencies with *performance*" of the software programs.  This makes clear that Plaintiff is not seeking documents reflecting problems with customer service, or with implementation of the software.  Unlike the requests at issue in the cases Defendant cites, here the Requests do not seek "all documents concerning plaintiff" or all documents "that relate to litigation involving the plaintiff."[19]  Rather, Plaintiff seeks—and Defendant is obligated to provide—only documents that reflect problems with *performance* of the specific software programs identified.  Thus, it is clear that the Requests do not, contrary to Defendant's assertion, require production of "every customer comment to Pulse from any customer."[20]  Additionally, although Defendant suggests that these Requests are "unlimited in time," Plaintiff suggested during informal attempts to resolve this discovery dispute that the time frame be limited to June 4, 2010 through September 15, 2014.[21]  Applying this time limitation, the Court finds the Requests are not overly broad.

---

[17] 232 F.R.D. 377, 381–82 (D. Kan. 2005).

[18] *Id.* at 382.

[19] *Pulsecard, Inc. v. Discover Card Servs., Inc.*, No. Civ. A. 94-2304-EEO, 1996 WL 397567, at *10 (D. Kan. July 11, 1996); *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003); *Bradley v. Val-Mejias*, No. 00-2395-GTV, 2001 WL 1249339, at *6 (D. Kan. Oct. 9, 2001).

[20] Doc. 57 at 7.

[21] Doc. 56-2 at 1.

The Court also finds that the Requests are not unduly burdensome. Defendant estimates that it will take 140 to 160 hours to search its electronically stored information and an additional 140 to 160 hours to search physical documents for information related to the Requests here at issue. Defense counsel will also need to review the documents before production. The Court understands that complying with these Requests will place a burden on Defendant and its counsel. This burden, however, is mitigated by the time limitation applied to the Requests, as well as the fact that the they seek e-mails and documents related only to performance issues of the PMS software and EHR software. Although production may be burdensome, moreover, the Court is not convinced that it will be *unduly* burdensome, given the importance of the discovery in resolving the issues and the parties' relative access to the relevant information.[22] There is no dispute Defendant is the only party with reasonable access to documents and e-mails that may reflect problems and issues about performance of the PMS and EHR softwares. Documents that reflect problems, issues, and deficiencies with the software, which Defendant allegedly had during the requested time period, may be highly relevant to the fraud claim. The Court finds, therefore, that the Requests are neither overly broad nor unduly burdensome. It overrules the objections to Requests 21 and 22. Defendant shall produce all documents and e-mails responsive to these Requests and created between June 4, 2010 and September 15, 2014.

### B.     Requests 23 Through 25

Requests 23 through 25 seek production of "all documents and e-mails reflecting claims for providers other than Cooper," which either (1) Defendant was unable to submit through the PMS software; (2) were submitted through the PMS software and Medicare or other payors rejected; or (3) which Defendant submitted two or more times to Medicare or other payors.

---

[22]Fed. R. Civ. P. 26(b)(1).

Defendant argues that these Requests are overly broad and unduly burdensome, in that they seek a general category of documents and use the omnibus term "relating to" without reference to any limiting descriptors. Defendant contends that "[t]he coupling of the word [']reflecting['] with the word [']claims,['] in this particular case, would include every document that went through the PMS because only claims go through the PMS."[23] As the Requests themselves make clear, however, Plaintiff does not seek every document that went through the PMS software, but rather only certain claims that were unsuccessfully submitted. This distinction is important, because it demonstrates that production of only documents related to specific categories of claims is required, rather than production as to all claims. Accordingly, the Court finds that these Requests are not overly broad.

      The Court further finds that the Requests are not unduly burdensome for three reasons. First, as Defendant acknowledges, the term "claims" has a specific definition, which will make searching for documents related to the claims more efficient.[24] Second, like Requests 21 and 22, Plaintiff proposed limiting the relevant time frame for Requests 23 through 25 to June 4, 2010 through September 15, 2014.[25] Applying this time frame will reduce the burden of production as to Requests 23 through 25. Finally, Defendant argues that "[t]he contract between [Plaintiff] and [Defendant] did not obligate [Defendant] to send claims on behalf of [Plaintiff]. Instead, [Plaintiff] was responsible for sending its claims to the respective payers [sic]."[26] If Defendant's assertion is correct, then the burden of production with regard to Requests 23 and 25 will be

---

[23]Doc. 57 at 8.

[24]*Id.* ("the 'claims' are the requests for payment submitted by other customers of Pulse to insurance carriers, Medicaid, Medicare, etc").

[25]Doc. 56-2 at 1.

[26]*Id.*

slight, because those Requests relate to claims submitted directly by Defendant.[27] If, however, Defendant is incorrect, then production of documents and e-mails related to those ultimately unsuccessful claims submitted by Pulse will be relevant to Plaintiff's claims. Under either scenario, the burden of production does not outweigh the benefit and relevancy of the requested information.[28] For these reasons the Court finds that Requests 23 through 25 are not overly broad or unduly burdensome. The Court thus denies Defendant's objections. Defendant shall produce all documents and e-mails relevant to these Requests created between June 4, 2010 and September 15, 2014.

      C.     **Request 26**

Request 26 seeks production of "all documents and e-mails reflecting formatting errors or issues with claims for providers other than [Plaintiff], which were submitted through the PMS." Defendant repeats its objections that this Request is overly broad and unduly burdensome. Although this Request is similar to Requests 23 through 25, there are several key differences. First, Request 26 does not apply to a specific category of claims, but instead applies to documents that reflect formatting errors or issues for *all* claims that were submitted through the PMS software. Second, unlike Requests 23 and 25, Request 26 applies to claims submitted either by Defendant *or* a customer. Finally, and perhaps most importantly, the terms "formatting errors" and "issues" do not appear well defined in this context. As used here, "issues" may encompass user errors, noncompliance with payor rules, or other issues not relevant to this

---

[27]The remaining burden of production as to Request 24 would also be relatively slight, because Request 24 is limited to claims that "were submitted through the PMS software and rejected by Medicare or other payors."

[28]Fed. R. Civ. P. 26(b)(1); *see Ardent Mills, LLC v. Archer-Daniels-Midland Co.*, No. 12-2171-EFM, 2014 WL 7236760, at *5 (D. Kan. Dec. 17, 2014) (quoting *Heartland Surgical Specialty Hosp. v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 3171768, at *2 (D. Kan. Oct. 29, 2007)) ("when considering an undue burden objection, the court considers whether the burden or expense of complying with a discovery request 'is unreasonable in light of the benefits to be secured from discovery'").

case.[29]  Searching for any formatting errors or issues with respect to *all* claims that were submitted through the PMS software would create a burden of production disproportionate to the benefit of the information.  Accordingly, the Court sustains Defendant's objections to Request 26.

### D. Requests 27 and 28

Requests 27 and 28 seek production of "all complaints, criticisms and concerns regarding the [PMS software or EHR software] received from providers other than [Plaintiff]."  Defendant repeats its objections that these Requests are overly broad and unduly burdensome.  These Requests are similar to Requests 21 and 22, which seek documents and e-mails "reflecting problems, issues or deficiencies with performance" of the software programs.  Additionally, the information sought here would be relevant to Plaintiff's fraud claim, as it would potentially demonstrate notice of problems with the software programs.

Requests 27 and 28, however, are more broad than Requests 21 and 22.  Requests 27 and 28 seek *all* complaints, criticisms, and concerns regarding the PMS software or EHR software, regardless of the subject of the complaints.  Whereas Requests 21 and 22 were limited to *performance* of the software, Requests 27 and 28 cast a wider net, and may require production of non-relevant information, including complaints about implementation of the software.  The interests served by such a broad request simply cannot overcome Defendant's legitimate concerns about the burden of production.  This is especially true where the Court is already allowing discovery of documents reflecting problems as to the performance of the software,

---

[29]The use of the term "issues" here is quite different from the use of "issues" in Requests 21 and 22.  There, the Requests make clear that only documents reflecting "issues" as to *performance* of the PMS software or EHR software are sought, whereas here documents reflecting "issues" as to *any* claims submitted through the PMS software are sought.

which cuts to the heart of this litigation.  Accordingly, the Court sustains Defendant's objections as to Requests 27 and 28.

### E. Request 29

Request 29 seeks production of "all answers and responses to Interrogatories, Requests for Production, and Requests for Admissions which [Defendant] has served in any lawsuit or arbitration concerning the PMS and/or EHR."  Defendant argues that the Request is overly broad, requiring production of information concerning collection actions, intellectual property disputes, and other irrelevant litigation.  Defendant also asserts that the Request is not tied to a specific time frame.

In attempting to resolve this dispute, it appears the parties came close to a solution as to Request 29, except as to the time frame for production.[30]  Defendant agreed to provide information as to lawsuits, arbitrations, and/or mediations for claims similar to Plaintiff's that took place between June 2010 and September 2014.  Plaintiff maintained its request for this information, with a time frame of June 2010 through the present.  The Court finds that with the caveat previously discussed by the parties—that production would include information only as to lawsuits, arbitrations, and/or mediations for claims similar to those of Plaintiff's—the Request is not overly broad.  Applying this limitation will ensure that Defendant is not obligated to provide information as to wholly irrelevant litigation.[31]  Additionally, although applying the time frame Plaintiff proposed may add to Defendant's burden of production, this added burden does not appear significant, especially in light of the potential that discovery responses in other cases during this extended time period may shed light on what Defendant may have known as to the performance of the PMS software and EHR software.  Therefore, the Court denies Defendant's

---

[30]*See* Doc. 56-6; Doc. 56-7.

[31]*See* Doc. 57 at 12–13.

13

objection as to Request 29.  Defendant shall provide documents related to relevant litigation that commenced between June 2010 to the present.

### F.     Cost-Shifting

Defendant argues that in the event it is compelled to produce the discovery requested by Plaintiff, the Court should condition such production on the payment of discovery costs by Plaintiff.  Generally, "the presumption is that the responding party must bear the expense of complying with discovery requests."[32]  Pursuant to Fed. R. Civ. P. 26(c), however, courts have broad discretion to protect a responding party from undue burden by conditioning discovery on the requesting party's payment of the costs of discovery or by restricting discovery.[33]  Because of the presumption that the responding party should bear the expense of complying with the requests, it bears the burden to establish that the discovery expense would be excessive and thus justify cost-shifting.  In determining whether to impose discovery costs upon the requesting party, courts typically consider the factors set forth in Rule 26(b)(1).  These include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[34]

The Court has considered the Rule 26(b)(1) factors in ruling on Defendant's objections to Plaintiff's Requests.  It has also restricted discovery in several ways and sustained the objections to Requests that were indeed overly broad or unduly burdensome.  The Court does not find that the remaining Requests are overly broad or unduly burdensome in light of the Rule 26(b)(1)

---

[32] *Foreclosure Mgmt. Co. v. Asset Mgmt. Holdings, LLC*, No. 07-2388-DJW, 2008 WL 3822773, at *7 (D. Kan. Aug. 13, 2008) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978)).

[33] *Id.* (citing *Oppenheimer Fund*, 437 U.S. 340; Fed. R. Civ. P. 34, advisory committee note, 1970 Am.).

[34] Fed. R. Civ. P. 26(b)(1).

factors in this case.  Further, although providing an affidavit, stating that the estimated time necessary to comply with the Requests ranges from 280 to 320 hours, it has provided no estimate cost for the compliance.  The estimated number of 280 to 320 hours, however, should be substantially reduced, because of the limitations the Court has placed on the content and time frames for the production.  Thus, the Court finds no adequate evidence or suggestion that cost shifting, as allowed by Rule 26(c), should be employed to protect Defendant from unduly burdensome discovery.  Accordingly, it denies the request for discovery costs.

## IV.    Conclusion

Plaintiff's Requests 21 through 25 are not overly broad or unduly burdensome in light of the importance of the issues at stake in this action, the parties' relative access to relevant information, the importance of the discovery in resolving the issues, and the balancing of the expense of the proposed discovery against its likely benefit.[35]  The Court therefore overrules Defendant's objections as to these Requests.  By contrast, Requests 26 through 28 are overly broad and would impose a substantial burden on Defendant.  Accordingly, the Court sustains Defendant's objections to these Requests.  The Court also finds that Request 29 is not overly broad and not unduly burdensome if Defendant is obligated to produce only responses to discovery requests in litigation involving claims similar to those of Plaintiff's, from June 2010 to present.  Finally, because the Court finds that the Requests that remain are not overly broad or unduly burdensome, the Court denies Defendant's request for discovery costs.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff Cooper Clinic, P.A.'s Motion to Compel Discovery (Doc. 56) is **granted as to Requests 21, 22, 23, 24, and 25**.  Defendant shall produce all relevant documents and e-mails created **between June 4, 2010 and**

---

[35] *Id.*

**September 15, 2014**.  Defendant shall produce all relevant documents and e-mails in response to these Requests by no later than **45 days after the issuance of this Order.**

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff Cooper Clinic, P.A.'s Motion to Compel Discovery (Doc. 56) is **granted as to Request 29.**  Defendant shall produce all answers and responses to Interrogatories, Requests for Production, and Requests for Admissions which Defendant has served in any lawsuit, arbitration, or mediation involving claims similar to those of Plaintiff's, which commenced **between June 4, 2010 and the present**.  Defendant shall produce all relevant documents in response to this Request by no later than **45 days after the issuance of this Order.**

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff Cooper Clinic, P.A.'s Motion to Compel Discovery (Doc. 56) is **denied as to Requests 26, 27, and 28**.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant Pulse System, Inc.'s request for discovery costs is **denied**.

Dated: January 30, 2017

>*/s Gerald L. Rushfelt*
>Gerald L. Rushfelt
>U.S. Magistrate Judge

16